UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Criminal No. 1:22-CR-10261-DJC |
| GERARDO M. QUINTERO | |

**DEFENDANT GERARDO QUINTERO'S SENTENCING MEMORANDUM**

The defendant, Gerardo Madrigal Quintero ("Mr. Quintero") is a 24-year-old, non-violent drug offender with no criminal record. The approximately 13 months that Mr. Quintero has spent in jail on this case has been, as one would expect, very difficult and humbling. Beyond his own personal shame and remorse, Mr. Quintero has been unable to provide financial and emotional support to his family, which has been an especially heart-breaking reality in the wake of his father's recent death.

Mr. Quintero pled guilty on July 11, 2023 to one count of Conspiracy to Distribute and to Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(A) and one count of Distribution of and Possession with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A). There is no plea agreement in this matter.

Mr. Quintero respectfully submits this Sentencing Memorandum, together with accompanying letters of support, documentation regarding his employment history as a truck driver, and certificates for the various courses that he has completed while in custody, to assist the Court in determining an appropriate disposition at the sentencing hearing on October 5, 2023.

For the reasons set out below, Mr. Quintero respectfully requests the Court impose a sentence of 22 months incarceration. In applying the factors set forth in 18 U.S.C. § 3553(a), the Court will find such a disposition is "sufficient but not greater than necessary" to achieve the goals of sentencing, given (1) Mr. Quintero's mitigating role in the conspiracy, (2) his family circumstances, (3) the need to avoid unwarranted sentencing disparities among similarly situated defendants, and (4) the substantial collateral consequences of the criminal convictions and incarceration. Each factor is briefly summarized below.

First, Mr. Quintero's minor role in the conspiracy to which he has pled guilty weighs in favor of the requested sentence. Mr. Quintero was a drug courier on one particular occasion. More specifically, on August 29, 2022, Mr. Quintero was arrested at a Service Plaza in Ludlow, Massachusetts after he transported approximately 15 kilograms of cocaine to a rest stop, where the co-defendant, Joel Enrique Armenta Castro ("Mr. Castro") arranged to pick up the drugs from him. There is no evidence that Mr. Quintero was aware of any larger drug organization or plan to distribute drugs. His criminal conduct consisted of driving the drugs from California to Massachusetts. He was a transporter. Nothing more, nothing less. A truck driver by trade, Mr. Quintero made the grave and isolated mistake of agreeing to transport a bag of drugs on a trip that he was already set to make as part of his work transporting furniture and related items from Mexico into the United States. Prior to this case, he was a full-time truck driver with no interaction with law enforcement or the criminal justice system. Simply put, Mr. Quintero fits squarely within the type of non-violent, first-time offender, with a mitigating role warranting a more lenient sentence.

Second, Mr. Quintero's family circumstances and personal characteristics warrant a variance from the advisory sentencing guidelines and the imposition of the requested sentence.

Mr. Quintero is truly a remarkable young man with a family who desperately needs him to return home. As reflected in the PSR, Mr. Quintero is a vital part of his family from both a financial and emotional perspective. The recent death of his father has left an even larger void in the family. Despite his difficult family and personal circumstances, Mr. Quintero has positively impacted those around him while he has been detained in jail. In a letter written by Kristen Damaso, the Chief of Programs at Wyatt Detention Facility, she lauds Mr. Quintero's contributions as a volunteer in a program to clean and improve the housing units in the facility:

> It was a pleasure to have Madrigal on the detail team. While on the team, he was an integral part of the detail. Detainee Madrigal has donated his time and effort to improve the space where all of the detainees currently lay their heads. We thank him for his time, effort, and dedication to their housing unit, and the facility as a whole.

A full copy of Ms. Damaso's letter is attached hereto as Exhibit A.

Third, a sentence of 22 months incarceration fairly accounts for sentences imposed upon defendants who have been similarly situated. In February 2023, Carlos Alfredo Longoria, a drug courier, was sentenced to 34 months in prison. *See United States v. Longoria*, 4:20-CR-40028-MGM (D. Mass 2023), ECF No. 201. Mr. Longoria pled guilty to same offenses as Mr. Quintero. *Id.* Unlike Mr. Quintero, Mr. Longoria engaged in multiple drug transactions, handled approximately $278,000 in drug proceeds, and in addition to transporting drugs also transported vehicles with hides for drug deals, all on behalf of a significant drug trade organization. *See* Government's Sentencing Memorandum as to Carlos Longoria at 1-2, ECF No. 183. The nature, scope, and duration of Mr. Quintero's criminal conduct is favorably distinguishable from Mr. Longoria's and warrants the requested sentence.

Fourth, a sentence of 22 months incarceration fairly accounts for the substantial collateral consequences Mr. Quintero has endured and must continue to endure because of the criminal charges and convictions. Most significantly, Mr. Quintero was not by his father's side when he

died due to a kidney infection in May 2023. This is a heartache that Mr. Quintero will live with for the remainder of his life. Additionally, it is virtually impossible that Mr. Quintero will ever again be able to obtain a work visa. This is a significant collateral consequence of his actions that will likely hinder his future ability to earn a solid income for his family.

### 1. The Advisory Sentencing Guidelines

The advisory sentencing guidelines begin with a base offense level of 32 because Mr. Quintero is accountable for at least 15 kilograms, but less than 50 kilograms of cocaine. PSR ¶ 23. Since Mr. Quintero receives an adjustment under § 3B1.1 and the base offense level under subsection (c) is level 32, the base offense level is decreased by two to a level 30. PSR ¶ 24. A two-level reduction is warranted, pursuant to USSG § 2D1.1(b)(18), and a three-level reduction is warranted based on Mr. Quintero's acceptance of responsibility. PSR ¶¶ 25, 31-32. Additionally, the PSR indicates that Mr. Quintero should receive a two-point role reduction, pursuant to USSG § 3B1.2(b). PSR ¶ 27.

The Probation Department and Mr. Quintero are agreed that without the "zero-point offender" provision (USSG § 4C1.1), which provides for a two-level decrease for offenders who have zero criminal history points, the adjusted total offense level under the Sentencing Guidelines is 23. PSR ¶ 33. The Probation Department and Mr. Quintero are also agreed that the Court can impose a downward variance due to Mr. Quintero's "zero-point offender" status. If the Court were to adopt this downward variance, Mr. Quintero's adjusted total offense level would be reduced by 2 levels resulting in a level 21, which yields a Total Guideline Sentencing Range of 37 – 46 months. PSR ¶ 89. Mr. Quintero respectfully requests that the Court adopt the variance based on his status as a "zero-point offender."

### 2. Mr. Quintero's Limited Role in the Offense and the Nature of his Conduct

Mr. Quintero respectfully submits that his guideline calculation should include a reduction in his offense level under U.S.S.G. §3B1.2. Section 3B1.2(a) of the Guidelines provides for a four-level adjustment for a defendant who is a "minimal participant" in a criminal activity. Section 3B1.2(b) of the Guidelines provides that a defendant who is a "minor participant in any criminal activity" shall be afforded a two-level adjustment. "The difference between a minimal and a minor participant is a difference of degree, not kind." *United States v. Santos*, 357 F.3d 136, 142 (1st Cir. 2004); *citing United States v. Sanchez*, 354 F.3d 70, n.2 (1st Cir. 2004). Section 3B1.2 further provides that in cases falling between those involving a "minimal participant" and those involving a "minor participant," a three-level adjustment is in order.

To qualify under §3B1.2(b) as a minor participant, "a defendant must prove that he is both less culpable than his cohorts in the particular criminal endeavor and less culpable than the majority of those within the universe of persons participating in similar crimes." *Santos*, 357 F.3d at 142. "Role-in-the offense determinations are notoriously fact-sensitive . . . ." *United States v. Ortiz-Santiago,* 211 F.3d 146, 148 (1st Cir. 2000). In determining whether to apply a mitigating role reduction, the Court should consider the following non-exhaustive list of factors:

- (i) the degree to which the defendant understood the scope and structure of the criminal activity;
- (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
- (iii) the degree which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
- (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
- (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2 cmt. (n.3(C)).

Here, Mr. Quintero's participation in the conspiracy was limited to the cocaine he transported on one occasion, which was subsequently seized by law enforcement. There is no direct or circumstantial evidence to establish that Mr. Quintero conducted any drug transactions or operations on any other occasions. There is no evidence that Mr. Quintero recruited anyone else into the conspiracy or exercised any authority or supervision over anyone. There is nothing to suggest that Mr. Quintero planned or coordinated any of the criminal conduct. As indicated in the PSR, Mr. Quintero was a drug courier, who delivered a bag of drugs to Boston in exchange for $4,000, which was a fraction of the value of the 15 kilograms of cocaine contained in the bag. PSR ¶ 27. Additionally, there is no evidence that Mr. Quintero had any knowledge of the scope and structure of the criminal activity, or that he was aware of the specific drug that he was transporting. *Id*.

Mr. Quintero stands in sharp contrast to Mr. Castro, his co-defendant in the conspiracy charge. As detailed in the PSR, Mr. Castro made statements to a cooperating witness indicating that he had made similar trips to obtain drugs on prior occasions, and that he had strategies for avoiding detection from law enforcement. PSR ¶ 11. Mr. Castro told the cooperating witness that he had been sent to do the drug deal by his "associates" in Mexico, many of whom Mr. Castro spoke with over the telephone while he was with the cooperating witness. *Id*. Unlike his co-defendant, Mr. Quintero did not have any ties to drug associates in Mexico, nor did he have authority to coordinate any of the terms of the drug transaction, nor is there any evidence that he intended to have any further involvement in drug activity. Clearly, Mr. Quintero is less culpable than his co-defendant.

Additionally, Mr. Quintero is "less culpable than the mine-run of those who have committed similar crimes." *United States v. Melendez-Rivera*, 782 F.3d 26, 28 (1st Cir. 2015).

*See United States v. Cabrera*, 567 F. Supp. 2d 271, 278 (D. Mass. 2008) (defendant received a minimal role adjustment due to his courier status "…plainly a delivery man is at the bottom of the hierarchy.")  *Contrast United States v. De la Cruz-Gutierrez*, 881 F.3d 221 (1st Cir. 2018) ("Based on the record before it—including De la Cruz's participation in multimillion dollar drug smuggling venture involving more than $10,000,000-worth of cocaine aboard a small vessel with a single outboard motor…the district court reasonably inferred that De la Cruz was no 'Johnny-come-late[ly]' or an ordinary mule, but rather that he, as well as his cohorts, were 'persons of trust within the organization.'"). It bears noting that there is nothing extraordinary about Mr. Quintero's actions or words during the commission of the offense that suggests he is prone to violence or is a dangerous person.  Indeed, he was used as a transporter in the conspiracy.  For all of the reasons stated above, Mr. Quintero is precisely the type of defendant worthy of a mitigating role reduction.

### 3. Mr. Quintero's Family Circumstances and Personal History

Mr. Quintero was born in Mexico, the older of two sons, he was raised in a tight-knit family by hard-working parents.  PSR ¶ 43.  At the age of 15, Mr. Quintero withdrew from school to work and help the family financially.  *Id*.  At the age of 16, Mr. Quintero obtained his driver's license and began following in his father's footsteps by becoming a truck driver.  *Id*.  As Mr. Quintero learned from his father how to drive a truck, they grew closer in their relationship.  *Id*.

As Mr. Quintero grew in age and in his ability as a truck driver, he took more responsibilities as the primary income earner for the family.  His father's death coupled with Mr. Quintero's incarceration have placed an even greater financial burden on the family.  *Id*. at 48.  More important than the financial loss, Mr. Quintero has experienced the painful passing of his

father while he has been detained on the instant case. As Mr. Quintero described in his interview with Probation, his father was "everything to me." *Id*. at 45.

It is difficult to fully articulate the full measure of Mr. Quintero as a husband, son, brother, friend, and co-worker. Although mere written words can never fully suffice to describe a person, the PSR and letters submitted herewith do depict a man who other than the instant offense, has lived an honorable, generous, and responsible life. The letters of support and related materials illustrate several admirable qualities about Mr. Quintero. *See* Exhibits B and C.

First and foremost, he is a loving husband. Mr. Quintero's wife, Hairi Yamileth Mendoza Beltran, writes in her letter to the Court:

> I am very proud of the man I married, he treats me very well, he respects me as a partner and a woman, and that he likes to help people when they need it…He always makes sure that his parents and brother are well, and he cares for my parents and brother. Gerardo is a very hard working and responsible man…He is responsible for buying the groceries and taking care of the household expenses.

*See* Exhibit B.

Second, he is an accomplished truck driver. As depicted in the various photographs attached hereto as Exhibit D, Mr. Quintero takes pride in his work as a commercial truck driver. He is well-liked by his co-workers. His job provided him with dignity and purpose. One of the attached photographs depicts Mr. Quintero and his co-workers proudly holding their work visas which permitted them to work in the US as commercial truck drivers.

Third, he is a good-natured person. As reflected in the various letters of support from family members and extended relatives, Mr. Quintero is universally viewed as respectable and kind. For example, in a letter written by Ivan Saul, Mr. Quintero's brother, he notes:

> The fact that my brother is locked up is something very heavy because we do not know how to deal with our emotions because of my dad…I hope you understand the lack that Gerardo makes us all here, he has always been a very noble and stable person in all ways,

  he is a centered and good person with everyone, he helps people when they need it and he can.

*See* Exhibit B.

  Fourth, Mr. Quintero is not only a hard worker, but also shows great potential far beyond when he is done serving his sentence. As reflected by the courses that he has completed while detained at Wyatt Detention Facility, Mr. Quintero has taken full advantage of every opportunity to educate himself. Indeed, he has completed approximately 16 courses while detained in custody. *See* record of courses completed attached hereto as Exhibit E.

  **4. Consideration of Sentences Imposed Upon Similarly Situated Defendants**

  Mr. Quintero respectfully submits a sentence of 22 months incarceration fairly accounts for his criminal conduct and individual circumstances in relation to sentences imposed in similar matters. In *United States v. Carlos Longoria*, the defendant ("Mr. Longoria") pled guilty to Conspiracy to Distribute/Posses with Intent to Distribute Five Kilograms or more of Cocaine and Distribution of and Possession with Intent to Distribute Five Kilogram or more of Cocaine. 4:20-CR-40028-MGM (D. Mass 2023). Mr. Longoria was responsible for at least 15 kilograms, but less than 50 kilograms of cocaine. *See Government's Sentencing Memorandum as to Carlos Longoria* at 1, ECF No. 183. Mr. Longoria was involved in distributing large-scale quantities of cocaine on multiple occasions, as well as collecting drug proceeds for a significant drug organization. *Id*. Mr. Longoria was a truck driver who transported tens of kilograms of cocaine from Texas to other locations, including Massachusetts. *Id*. On one occasion, Mr. Longoria collected $278,000 in drug proceeds. *Id.* at 4. In total, Mr. Longoria was responsible for between 24 and 27 kilograms of cocaine. *Id*. His resulting guideline range, without any criminal history, was 46-57 months. *Id*. Mr. Longoria received a 34-month sentence.

In contrast, Mr. Quintero made a single delivery of 15 kilograms of cocaine in exchange for $4,000, which is substantially less drug weight and barely a fraction of the money involved in Mr. Longoria's criminal case. Unlike Mr. Quintero who had no knowledge or responsibilities regarding any large-scale operations, Mr. Longoria discussed with a cooperating witness supplying fentanyl, and future transactions between the drug trade organization and the cooperating witness. *Id*. They also discussed the quantities of drugs that could be hidden in secret compartments inside vehicles that Mr. Longoria transported. *Id*.

Additionally, Mr. Quintero's co-defendant, Mr. Castro, received a sentence of 48 months incarceration. His sentencing guidelines as calculated by the parties were 57-71 months. The nature, scope, and duration of Mr. Quintero's criminal conduct as contrasted with Mr. Castro and Mr. Longoria, warrant Mr. Quintero's sentencing recommendation.

**5. Collateral Consequences of Mr. Quintero's Guilty Plea**

Mr. Quintero legally entered the United States in May 2023 pursuant to a work visa. The visa's expiration date is in April 2032. However, given Mr. Quintero's guilty pleas in this matter, it is virtually a foregone conclusion that he will no longer be able to obtain a visa and work in the United States. This is a significant punishment for him, and indirectly, for his family, who depend on Mr. Quintero for financial support.

The emotional scars of losing his father while in prison will last with Mr. Quintero long after he is done serving his prison sentence. Although Mr. Quintero has only himself to blame for not being with his father in the days leading up his death, it remains a substantial collateral consequence of his actions and should be considered by the Court in determining an appropriate disposition.

## **CONCLUSION**

There is no dispute that Mr. Quintero's criminal conduct is serious. To be clear, he fully understands and appreciates the consequences of his actions and sincerely regrets his inexcusable decision to engage in criminal conduct. Indeed, he has felt the consequences of his actions in very real terms. While Mr. Quintero's limited role in the offense does not absolve him of punishment, the fact that he is an otherwise decent young man with a family who desperately needs him home is relevant to assessing the severity of the punishment called for. Weighed as well should be the contributions that he has made to the Wyatt Detention Facility, which speaks volumes about this character and motivation to make better decisions in life. Also placed into the balance should be the need to avoid unwarranted sentencing disparities among similarly situated defendants.

The recommended sentence would adequately serve all the purposes of sentencing including general deterrence. Certainly, a 22-month sentence would send a clear message to those seeking to make money by transporting drugs: engaging in drug activity, even at the lowest level as a first-time non-violent drug courier, will result in a lengthy prison sentence. Similarly, the requested disposition will accomplish the goal of specific deterrence. Mr. Quintero has learned a painful lesson over the last 13 months, and he will never again engage in any conduct of this sort.

In sum, Mr. Quintero respectfully submits that, applying 18 U.S.C. § 3553(a), the factors set forth here strongly support the proposed disposition as both sufficient and all that is necessary to fulfill the needs of federal sentencing in this case.

Respectfully submitted,

Gerardo Quintero,

By his attorney,

/s/ Michael R. DiStefano
Michael R. DiStefano (BBO # 675615)
mdistefano@toddweld.com
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02109
T: 617-720-2626

Dated:  September 28, 2023

**CERTIFICATE OF SERVICE**

I, Michael R. DiStefano, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Michael R. DiStefano
Michael R. DiStefano

Dated: September 28, 2023